1997 proceeding in existence. We agree. "Consolidation is the merging of various [proceedings] into one [proceeding], which takes on one caption and culminates in one judgment" (*Matter of Associated Blind Hous. Dev. Corp. v State of N. Y. Dept. of Pub. Serv.*, 142 AD2d 825, 827). Venue of a proceeding is changed when proceedings are consolidated, but not when a joint trial is ordered (*see, Barch v Avco Corp.*, 30 AD2d 241).

In granting respondents' motion and dismissing the 1994 petitions and denying petitioner's cross motion for relief from dismissal under RPTL 718, the court in a letter decision stated that the order of June 15, 1998 provided for a joint trial and did not merge the various petitions into a single proceeding or create a new proceeding.

The June 15th order, however, in fact ordered consolidation, and the court lacks the power to correct an error of substance in a prior order even upon a motion under CPLR 5019 (*see, Bolger v Davis*, 127 AD2d 979). Thus, because there is a single consolidated 1997 proceeding and the 1994 petitions no longer have separate existence, respondents' motion to dismiss the 1994 petitions pursuant to RPTL 718 (2) (d) and petitioner's cross motion to be relieved of dismissal should have been dismissed.

We note that this result is contrary to the intent of RPTL 718 to reduce the uncertainty of financial planning for governmental units dependent upon real property taxes caused by delay in resolving assessment disputes. The parties sought to be protected, however, include respondent towns, and their successful motion caused the situation in which they find themselves. They may not be heard to contend otherwise. (Appeals from Order of Supreme Court, Wayne County, Kehoe, J.—RPTL.) Present—Pigott, Jr., P. J., Pine, Wisner and Hurlbutt, JJ.

■ Annette Lorenzo-Jakubowski, Also Known as Annette Lorenzo, Respondent, v Gregory F. Jakubowski, Appellant. (Appeal No. 1.) [705 NYS2d 542] —Appeal unanimously dismissed without costs (*see, Matter of Eric D.* [appeal No. 1], 162 AD2d 1051). (Appeal from Order of Supreme Court, Monroe County, Fisher, J.—Support.) Present—Pigott, Jr., P. J., Pine, Wisner and Hurlbutt, JJ.

■ Annette Lorenzo-Jakubowski, Also Known as Annette Lorenzo, Respondent, v Gregory F. Jakubowski, Appellant. (Appeal No. 2.) [705 NYS2d 542] —Appeal unanimously dismissed without costs (*see, Matter of Eric D.* [appeal No. 1], 162 AD2d 1051). (Appeal from Order of Supreme Court, Monroe County,

Fisher, J.—Support.) Present—Pigott, Jr., P. J., Pine, Wisner and Hurlbutt, JJ.

■ EAGLE COMTRONICS, INC., Respondent, v PICO PRODUCTS, INC., Appellant. [705 NYS2d 758] —Order unanimously reversed on the law with costs, motion denied in part, fourth affirmative defense and counterclaims reinstated, cross motion granted and complaint dismissed. Memorandum: This dispute arises out of a June 1988 patent license agreement entered into between plaintiff, Eagle Comtronics, Inc. (Eagle), as licensee, and defendant, Pico Products, Inc. (Pico), as licensor. On a prior appeal, we granted that part of Pico's motion seeking dismissal of the causes of action for unjust enrichment and unfair competition (*Eagle Comtronics v Pico Prods.*, 256 AD2d 1202), leaving only the causes of action for breach of contract and fraud. Pico appeals from an order granting Eagle's motion seeking partial summary judgment on the issue of liability and seeking dismissal of the affirmative defenses and counterclaims and denying Pico's cross motion seeking summary judgment dismissing the complaint. In granting Eagle's motion, Supreme Court determined that Eagle "is entitled to a paid-up license on the same terms as those obtained by [Arcom] in the [r]evised [l]icense [a]greement signed on behalf of Pico and Arcom on October 11, 1988", and ordered an inquest on damages.

We agree with Pico that the court erred in granting Eagle's motion and denying Pico's cross motion. Pico contends that the June 1988 Pico-Eagle agreement provided that Eagle was entitled to amend the agreement to include more favorable terms subsequently granted only to a licensee who was not then holding a written license. Pico contends in the fourth affirmative defense that the "most favored" provision of the Pico-Eagle agreement was not triggered because Arcom held a written license before the Pico-Eagle agreement was made. Eagle counters, however, that the Pico-Arcom agreement of 1984 was terminated automatically by article 10 of that agreement and that the 1988 revised Pico-Arcom agreement triggered the "most favored" provision of the Pico-Eagle agreement.

Under the terms of the Pico-Eagle agreement, if Arcom was "a company presently holding a written license from" Pico in June 1988, then Pico had no obligation to offer Eagle the same favorable terms "subsequently extend[ed]" to Arcom when Pico and Arcom revised their license agreement in October 1988. There is no merit to Eagle's contention that, when Arcom ceased paying royalties in 1987, the 1984 Pico-Arcom license arrangement was terminated, automatically and without any action or choice on Pico's part. Read as a whole, paragraph 10